UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

**RAMEL M. TOWNS,**

                        **Plaintiff,**

v.                                                     1:16-CV-01545 (BKS/DJS)

**NEW YORK STATE TROOPER THERESA STANNARD,** in her individual capacity, **INVESTIGATOR WILLIAM SHEA,** in his individual capacity, **SENIOR INVESTIGATOR KARL MEYBAUM,** in his individual capacity, **TROOPER MATTHEW CARNIGLIA,** in his individual capacity, **TROOPER TIMOTHY MALLORY,** in his individual capacity, **AND INVESTIGATOR WARREN LAW,** in his individual capacity,

                        **Defendants.**
_____

**APPEARANCES:**

Lewis B. Oliver, Jr.
Oliver Law Office
156 Madison Avenue
Albany, NY 12202
*For Plaintiff*

Eric T. Schneiderman
Attorney General of the State of New York
Helena O. Pederson
Assistant Attorney General
The Capitol
Albany, NY 12224
*For Defendants*

1

**Hon. Brenda K. Sannes, United States District Court Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I.     INTRODUCTION**

Plaintiff Ramel M. Towns ("Plaintiff") brought this action under 42 U.S.C. § 1983 alleging that Defendant New York State Troopers and Investigators violated his constitutionally protected rights when they stopped, searched, and arrested him on September 8, 2014 in Warren County, New York.  (Dkt. No. 1, at 5–16).  Specifically, Plaintiff claims that Defendants' conduct constituted: (1) illegal detention, excessive use of force, unlawful search and seizure, malicious prosecution, and conspiracy in violation of the Fourth Amendment; (2) racial discrimination in violation of the Fourteenth Amendment and 42 U.S.C. § 1981; and (3) false arrest, assault and battery, and malicious prosecution in violation of New York State common law.  (*Id.* at 16–41).

Defendants move to dismiss Plaintiff's state-law claims for false arrest, assault and battery, and malicious prosecution on the ground that they are time barred.  (*Id.* at 8–11). Defendants further move to dismiss Plaintiff's claims against them in their official capacities as barred by the Eleventh Amendment, and Plaintiff's Fourth Amendment claims for excessive force, malicious prosecution, conspiracy, and racial discrimination for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  (Dkt. No. 8-1, at 11–22).  Additionally, Defendants move to dismiss Plaintiff's excessive force, malicious prosecution, conspiracy, and racial discrimination claims on the basis that Defendants are entitled to qualified immunity.  (*Id.* at 22–24).

Plaintiff states that his claims against Defendants in their official capacities were brought "as an editing error" and clarifies that his complaint is against Defendants in "their individual

2

capacities only."[1]  (Dkt. No. 13, at 2).  Plaintiff does not dispute that his state-law claims are time barred (*id.* at 3) and also withdraws his claim for malicious prosecution because "by the time the criminal complaint was filed," Defendants "did have probable cause to commence a criminal prosecution against plaintiff," (*id.* at 4).  Accordingly, with regard to Plaintiff's official capacity claims, state-law claims, and malicious prosecution claim, Defendants' motion to dismiss is granted.  Plaintiff's remaining claims for excessive force, conspiracy, and racial discrimination are considered in turn below.[2]

## II.   BACKGROUND[3]

On September 8, 2014, Plaintiff was traveling northbound on interstate I-87 as a passenger in a 2001 Pontiac Grand Am driven by James Hairston.  (Dkt. No. 1, at 5).  Plaintiff and Mr. Hairston, both African-American males, were traveling from Bronx, New York, to Burlington, Vermont, to visit one of Plaintiff's family members.  (*Id.* at 5, 7).  At approximately mile marker 62, Defendant New York State Trooper Theresa Stannard initiated a traffic stop on the vehicle "for allegedly speeding."  (*Id.* at 5).  Trooper Stannard performed a "DMV check" of the driver, Mr. Hairston, and his vehicle, which indicated that his license had been suspended, that he had no insurance on file, and that the vehicle's registration had been suspended for multiple unpaid parking violations.  (*Id.*).  Trooper Stannard requested backup, and Senior Investigator Meybaum, Investigator Shea, and Investigator Law arrived shortly thereafter in response.  (*Id.* at 5–6).  Mr. Hairston was then placed under arrest for operating a vehicle with a

---

[1] Accordingly, the Court has amended the caption to reflect dismissal of all claims against Defendants in their official capacities.
[2] Defendants did not move to dismiss Plaintiff's illegal detention (Claim 1) or unlawful search and seizure claims (Claim 5).
[3] The facts are taken from the Complaint and assumed to be true for the purposes of this decision. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

suspended license and suspended registration. (*Id.* at 6). Mr. Hairston was not cited for speeding. (*Id.*).

The responding Troopers and Investigators ordered Plaintiff to exit out of the passenger-side door to be searched and questioned, having allegedly noticed "a small amount of marijuana particles" in the cup holder of the vehicle. (*Id.*). In fact, "[t]here were no marijuana particles in the cup holder." (*Id.*). The Troopers questioned Plaintiff about the reason for traveling to Vermont and asked whom he intended to visit there. (*Id.* at 7). Plaintiff provided the Troopers with the name of a family member, but showed them a different name in his cell phone—a discrepancy he explained to be the result of the family member using a childhood nickname, rather than the name Plaintiff initially told the police. (*Id.*). Plaintiff was then handcuffed with his hands "twisted" so that his "left palm was touching the back of his right wrist," causing "extreme pain to his wrist and shoulder." (*Id.*). The Troopers and Investigators then conducted a "vehicle impound and inventory search" of the vehicle that lasted approximately fifty minutes. (*Id.*). During this time the Defendants "repeatedly frisked and/or patted down and searched" Plaintiff. (*Id.* at 8). Finding nothing, the Troopers and Investigators then asked Plaintiff whether he had any drugs hidden in his rectum, and told him that a canine unit was being dispatched to determine whether Plaintiff was lying. (*Id.*). Plaintiff denied having any drugs—when he objected to another pat-down search, an Investigator "stated words to the effect that 'it's not like it's because you're black.'" (*Id.* at 9). Defendants also told Plaintiff that he "should call his boy and tell him that the package isn't coming and that [Plaintiff] had gotten popped," and commented on the tightness of his pants. (*Id.* at 10–11). During this time, Plaintiff repeatedly asked for water and to be "re-handcuffed or handcuff[ed] . . . with his hands in front of him," but "Defendants refused to accommodate [P]laintiff's requests." (*Id.* at 7).

4

At approximately 2:00 pm, approximately four hours after Plaintiff was initially handcuffed by the Troopers and Investigators, Trooper Carniglia arrived at the scene with his drug-sniffing canine. (*Id.* at 10). When the canine allegedly positively alerted to the presence of drugs on the front passenger seat of the vehicle, the Troopers informed Plaintiff that he was under suspicion for the possession of drugs. (*Id.* at 12). Trooper Carniglia performed a cavity search on Plaintiff that lasted approximately five minutes on the side of interstate I-87 in view of passing traffic. (*Id.* at 12). The search uncovered a "package" of a substance that a field drug identification test indicated was crack cocaine. (*Id.* at 13). An Investigator then read Plaintiff his *Miranda* rights and Plaintiff was transported to Lake George Town Court for arraignment. (*Id.* at 14). Plaintiff was charged with possession of a controlled substance in the seventh degree, a misdemeanor, and released ninety-two days later on January 7, 2015. (*Id.*).

On October 22, 2015, a suppression hearing was held before the Town Justice of the Lake George Town Court. (*Id.* at 15). Following the hearing, Plaintiff's attorney determined that mile marker 62, where the Troopers had stopped the vehicle in which Plaintiff was a passenger, was within the jurisdictional boundary of the town of Bolton, not Lake George. (*Id.*). On November 2, 2015, the Town Justice of the Lake George Town Court dismissed charges against Plaintiff for "lack of geographic jurisdiction and an inability to transfer the matter to another court." (*Id.*). The Warren County District Attorney, despite being "free to file an accusatory instrument in the Town of Bolton," did not pursue further charges against Plaintiff in connection with the September 8, 2014 incident. (*Id.* at 15).

### III.   STANDARD OF REVIEW

To survive a motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must provide 'enough facts to state a claim to relief that is

plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Mayor & City Council of Balt.*, 709 F.3d at 135 (quoting *Twombly*, 550 U.S. at 555).  The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.  *See E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 253 (2d Cir. 2014).[4]  Finally, "[a] court must deny a motion to dismiss 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Aikman v. Cty. of Westchester*, 491 F. Supp. 2d 374, 378 (S.D.N.Y. 2007) (quoting *Stewart v. Jackson & Nash*, 976 F.2d 86, 87 (2d Cir. 1992)).

## IV. DISCUSSION

### A. Excessive Force (Claim 3)

Defendants move to dismiss Plaintiff's excessive force claim on the basis that the Complaint "contains no allegation that [Plaintiff] suffered any type of injury as a result of the handcuffing, beyond temporary pain and discomfort."  (Dkt. No. 8-1, at 12).  Plaintiff responds that this is not a "simple handcuffing case," and that "[f]ocusing only on whether the handcuffs

---

[4] The Court notes that Plaintiff has attached extensive documentary evidence to his response in opposition to Defendants' motion to dismiss without providing any legal rationale to support the Court's consideration of this evidence.  (Dkt. No. 13 at 4–6).  When considering a motion to dismiss, however, a court "must limit itself 'to a consideration of the facts that appear on the face of the complaint,'" or convert the motion to one for summary judgment.  *Vollinger v. Merrill Lynch & Co.*, 198 F. Supp. 2d 433, 437 (S.D.N.Y. 2002) (quoting *Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984)).  The Court declines to convert Defendants motion to one for summary judgment, and accordingly, disregards the exhibits attached to Plaintiff's opposition papers.  (Dkt. No. 13-1).

injured a citizen fails to take into consideration the objective reasonableness of the use of force under all the circumstances as required by the Fourth Amendment." (Dkt. No. 13-2, at 13).

Any claim that police officers "have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis omitted). In determining whether a particular use of force is "reasonable," a court must evaluate "the totality of the circumstances, which requires consideration of the specific facts in each case, including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of others and whether he is actively resisting arrest." *Sullivan v. Gagnier*, 225 F.3d 161, 165 (2d Cir. 2000). This "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97.

"Courts apply a separate standard to claims for excessive force in the use of handcuffs," *Sachs v. Cantwell*, No. 10 Civ. 1663, 2012 U.S. Dist. LEXIS 125335, at *44, 2012 WL 3822220, at *14 (S.D.N.Y. Sept. 4, 2012), and courts within the Second Circuit have held that "overly tight handcuffing can constitute excessive force," *Lynch v. City of Mount Vernon*, 567 F. Supp. 2d 459, 468 (S.D.N.Y. 2008). In determining "the reasonableness of handcuffing," a Court is to consider whether a plaintiff has sufficiently alleged that: "(1) the handcuffs were unreasonably tight; (2) the defendants ignored the arrestee's pleas that the handcuffs were too tight; (3) the degree of injury to the wrists." *Esmont v. City of New York*, 371 F. Supp. 2d 202, 214–15 (E.D.N.Y. 2005) (citations omitted). "The injury requirement is particularly important." *Usavage v. Port Auth. Of N.Y. & N.J.*, 932 F. Supp. 2d 575, 592 (S.D.N.Y. Mar. 26, 2013)

7

(internal quotation marks omitted).  "These injuries need not be 'severe or permanent,' but must be more than merely '*de minimis*.'"  *Id.* (quoting *Vogeler v. Colbath*, No. 04-CV-6071 (LMS), 2005 U.S. Dist. LEXIS 44658, at *30, 2005 WL 2482549, at *9 (S.D.N.Y. Oct. 6, 2005)).  Furthermore, "[t]here is a consensus among courts in this circuit that tight handcuffing does not constitute excessive force unless it causes some injury beyond temporary discomfort."  *Lynch*, 567 F. Supp. 2d at 468; *see also Gonzalez*, 2000 U.S. Dist. LEXIS 5230, at *12, 2000 WL 516682, at *4 (E.D.N.Y. Mar. 7, 2000) ("[I]f the application of handcuffs was merely uncomfortable or caused pain, that is generally insufficient to constitute excessive force.").

Plaintiff requests that the Court view his excessive force claims "in the context of the pretextual traffic stop and intrusive strip search and body cavity search."  (Dkt. No. 13-2, at 11).  Although Plaintiff correctly argues that any alleged use of excessive force during an arrest or investigative stop must be considered within the totality of the circumstances of the incident, he fails to plead any facts indicating that the force used by Defendant Troopers and Investigators was objectively unreasonable or more than *de minimis*—the only allegation of "force" in the Complaint is that Plaintiff was improperly handcuffed for approximately four hours.  Although there are factors that indicate that this is "more than a simple handcuffing case,"[5] (*id.*), Plaintiff does not allege that the handcuffs were too tight—only that he was handcuffed with his hands twisted.  Furthermore, Plaintiff does not allege that he suffered any continuing injury beyond the discomfort he experienced during the investigative stop and subsequent searches.  *See Lynch*, 567 F. Supp. 2d at 467 ("[T]he fact that the tight handcuffing did not cause [plaintiff] any

---

[5] These factors include, *inter alia*, that (1) Defendants frisked Plaintiff at least five times during the traffic stop; (2) Plaintiff requested water and repeatedly asked to be re-handcuffed in a more comfortable position; (3) Plaintiff was repeatedly moved in and out of a police vehicle between searches; and (4) the searches culminated in a cavity search in view of the public on the side of I-87.  (Dkt. No. 13-2, at 11–13).

8

continuing injury is fatal to the excessive force claim."). Although Plaintiff does allege that he experienced "extreme pain to his wrist and shoulder," (Dkt. No. 1 at 7), this qualifies as the kind of "temporary discomfort that courts have consistently found cannot constitute a claim for excessive force." *Bender v. City of New York*, No. 09 CV 3286 (BSJ), 2011 U.S. Dist. LEXIS 103947, at *18, 2011 WL 4344203, at *6 (S.D.N.Y. Sep. 14, 2011) (internal quotation marks omitted) (granting motion to dismiss where plaintiff alleged that she was handcuffed "extremely tightly for nearly fourteen hours leaving indentations in plaintiff's forearms for over six hours").

Even taking into account the length of time Plaintiff was handcuffed, courts have consistently dismissed excessive-force handcuffing claims as reasonable in cases where the handcuffing lasted a similar amount of time or longer. *See, e.g.*, *Muehler v. Mena*, 544 U.S. 93, 100 (2005) (two to three hours); *Johnson v. City of New York*, 940 F. Supp. 631, 637 (S.D.N.Y. 1996) (four to five hours); *Omor v. City of New York*, 2015 U.S. Dist. LEXIS 24135, at *19–20, 2015 WL 857587, at *8 (S.D.N.Y. Feb. 27, 2015) (four to five hours); *Bender*, 2011 U.S. Dist. LEXIS 103947, at *18 (fourteen hours). As the Supreme Court has noted, "[t]he risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation." *Michigan v. Summers*, 452 U.S. 692, 702–03 (2005). Plaintiff has therefore failed to plead that the handcuffing was unreasonable, and accordingly, Plaintiff's excessive force claim must be dismissed.

### B.   Conspiracy to Violate Civil Rights (Claim 8)

In their motion to dismiss, Defendants argue that because "Defendants are employees of the New York State Police, a single public entity and . . . were acting within the scope of their employment," Plaintiff's conspiracy claim is barred by the intracorporate conspiracy doctrine. (Dkt. No. 8-1, at 19). In response, Plaintiff asserts that the intracorporate conspiracy doctrine is

9

inapplicable because the "New York State police are not a corporation like a private company or an incorporated village or county."  (Dkt. No. 13-2, at 9).

To survive a motion to dismiss on a § 1983 conspiracy claim, a plaintiff must allege: "(1) an agreement between two or more state actors . . . (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).  Even where the requisite elements are sufficiently alleged, however, "[e]mployees of a single corporate entity are legally incapable of conspiring together under the intracorporate conspiracy doctrine.  This doctrine applies to public entities and their employees." *Lee v. City of Syracuse*, 603 F. Supp. 2d 417, 442 (N.D.N.Y. 2009) (holding that plaintiff's conspiracy claim against Syracuse Police Department barred by the intracorporate conspiracy doctrine), *overruled on other grounds*, *Widomski v. State Univ. of N.Y.*, 748 F.3d 471 (2d Cir. 2014).  Courts within the Second Circuit have "squarely held that the intracorporate conspiracy doctrine should be applied to § 1983 cases." *Rahman v. Fischer*, No. 9:10-CV-1496 (LEK/TWD), 2012 U.S. Dist. LEXIS 140455, at *40, 2012 WL 4492010, at *13 (N.D.N.Y. Sep. 28, 2012).

Despite Plaintiff's contention to the contrary, courts within this Circuit have repeatedly held that the intracorporate conspiracy doctrine is applicable to police departments or other law enforcement agencies as "public entities." *See, e.g.*, *Zachary v. City of Newburgh*, No. 13 CV 5737 (VB), 2015 U.S. Dist. LEXIS 129578, at *7, 2015 WL 5474245, at *3 (S.D.N.Y. July 27, 2015) (explaining that "plaintiff is incorrect that the intracorporate conspiracy doctrine does not apply" to police departments); *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 389 (S.D.N.Y. 2013) (applying intracorporate conspiracy doctrine because "participants in the conspiracy are officers with the White Plains Police Department"); *Ferlito v. City of Oswego*,

10

2006 U.S. Dist. LEXIS 54561, at *37, 2006 WL 2238939, at *12 (N.D.N.Y. Aug. 4, 2006) ("The intracorporate conspiracy doctrine applies to individual defendants who are members of the same police department."). Thus, the intracorporate conspiracy doctrine is plainly applicable to Defendants as it is undisputed that they were all employees of the New York State Police at the time of the incident.

The only recognized exception to the intracorporate conspiracy doctrine applies where the alleged participants in the conspiracy "pursue personal interests wholly separate and apart from the entity." *Orafan v. Goord*, 411 F. Supp. 2d 153, 165 (N.D.N.Y. 2006), *vacated and remanded on other grounds*, *Orafan v. Rashid*, 249 F. App'x 217 (2d Cir. 2007). This exception, however, is inapplicable here—Plaintiff acknowledges that "it is within the scope of employment of state troopers to apprehend speeding motorists and person who possess controlled substances." (Dkt. No. 13-2, at 9). Although Plaintiff attempts to argue that "the intracorporate conspiracy doctrine should not be applied to excuse law enforcement officers who knowingly violate [a] citizen's Fourth Amendment rights," (*id.*), the Court is unable to find any authority in support of this proposition. Accordingly, Plaintiff's conspiracy claim is dismissed as barred by the intracorporate conspiracy doctrine.

### C.   Racial Discrimination Claim (Claim 9)

Plaintiff alleges that Defendants' conduct constituted a "violation of [P]laintiff's clearly established right not to be subjected to racial profiling and racial discrimination under 42 U.S.C. § 1981 and the Equal Protection Clause of the Fourteenth Amendment." (Dkt. No. 1, at 39–40).[6]

---

[6] Courts in the Second Circuit "resolve Section 1981 claims under Section 1983 standards." *Anderson v. City of New York*, No. 06-CV-5726 (RRM) (RER), 2012 U.S. Dist. LEXIS 182520, at *8–9, 2012 WL 6720694, at *3 (E.D.N.Y. Dec. 27, 2012); *see also Whaley v. City Univ. of New York*, 555 F. Supp. 2d 381, 400 (S.D.N.Y. 2008) ("To the extent [plaintiff] seeks to vindicate any independent rights under 42 U.S.C. § 1981, he must do so via claims under § 1983."). Because § 1981 "provides no broader a remedy against a state actor than a suit brought under §1983," when a plaintiff brings claims under both statutes

11

Defendants contend that Plaintiff's claim must be dismissed because, "not only does it fail to allege that Defendants treated him differently than similarly situated persons, he also fails to allege facts suggesting that Defendants were motivated by any impermissible consideration." (Dkt. No. 14, at 9).

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situation should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting U.S. Const. amend. XIV, § 1). To adequately plead an "equal protection violation, claimants must prove purposeful discrimination directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995). Although the Second Circuit has held "[m]erely conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation," *United States v. Berrios*, 501 F.2d 1207, 1211 (2d Cir. 1974), "a plaintiff who . . . alleges that a facially neutral law or policy has been applied in an intentionally discriminatory race based manner . . . is not obligated to show a better treated, similarly situated group of individuals of a different race in order to establish a claim of denial of equal protection." *Pyke v. Cuomo*, 258 F.3d 107, 110 (2d Cir. 2001).

The allegations contained within the Complaint are sufficient to plausibly infer that the Defendants intentionally discriminated against him. Although the allegations of racial profiling are conclusory, the Complaint alleges that Defendant Trooper Stannard pulled over the vehicle

---

"and the defendants are state actors, the claims merge and the § 1981 claim is treated exactly like the § 1983 claim." *Caidor v. M&T Bank*, No. 5:05-CV-297, 2006 U.S. Dist. LEXIS 22980, at *39–41, 2006 WL 839547, at *10 (N.D.N.Y. Mar. 27, 2006) (internal quotation marks omitted). Accordingly, "a separate § 1981 analysis is not required, and the Court will consider Plaintiff's § 1981 claims only pursuant to § 1983." *Anderson*, 2012 U.S. Dist. LEXIS 182520, at *8–9, 2012 WL 6720694, at *3.

on the morning in question because Plaintiff and Mr. Hairston were "African-American males" riding in "a vehicle in rural upstate New York"; that the vehicle was not speeding, as Stannard had alleged; that Mr. Hairston was not subsequently cited for a speeding violation; that there was not any illegal motor vehicle infraction; and that the stop was pretextual. (Dkt. No. 1, at 6, 9–11, 40). With respect to the remaining Defendants charged with racial discrimination, the allegations regarding the searches, which are incorporated into this count, include allegations that when Plaintiff complained about being searched again, after he had been repeatedly frisked and searched, the investigator responded "it's not like it's because you're black," (*id.* at 9); when Plaintiff's cell phone began ringing, an investigator told Plaintiff that he should contact his "boy" and tell him he had "gotten popped," (*id.* at 10); the Plaintiff was detained for four hours on the side of the interstate (*id.* at 27–28); the Defendants falsely relied on "marijuana particles" in the cup holder of the vehicle as a basis for the detention and repeated searches (*id.* at 6, 28); and the Defendants conducted an illegal "strip search of the plaintiff's private bodily areas and body cavities" on the side of the interstate "in broad daylight and in plain sight of passing motorists" without an adequate legal justification for the search (*id.* at 28). Drawing all inferences in favor of Plaintiff, Plaintiff has sufficiently alleged that "a facially neutral law"—the New York Vehicle and Traffic Code— and facially neutral policies governing searches were "applied in an intentionally discriminatory race-based manner." *Pyke*, 258 F.3d at 110; *see Aikman v. Cty. of Westchester*, 491 F. Supp. 2d 374, 377, 383 (S.D.N.Y. 2007).

### D. Qualified Immunity[7]

---

[7] As Plaintiff's excessive force, malicious prosecution, and conspiracy claims are dismissed *supra*, Section VI(a)-(b), the Court considers Defendant's qualified immunity argument as to racial discrimination only.

"A government official sued under § 1983 is entitled to qualified immunity unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Carroll v. Carman*, __ U.S. __, 135 S. Ct. 348, 350 (2014) (per curiam). "A right is clearly established only if its contours are sufficiently clear that 'a reasonable official would understand that what he is doing violates that right.'" *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Further, when a defendant raises a qualified immunity defense at the motion to dismiss stage, "the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004). "Therefore, although possible, '*usually*, the defense of qualified immunity cannot support the grant of a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted.'" *Hershey v. Goldstein*, 938 F. Supp. 2d 491, 521 (S.D.N.Y. 2013) (quoting *McKenna*, 386 F.3d at 436) (internal punctuation omitted). It is premature to resolve a qualified immunity defense on the basis of allegations in a complaint when those allegations "do not sufficiently 'support the defense on the face of the complaint.'" *Id.* (quoting *McKenna*, 386 F.3d at 435) (internal punctuation omitted).

Here, the facts of the Complaint do not support Defendants' qualified immunity defense. As noted above, Plaintiff has sufficiently stated a claim for racial discrimination. As the case progresses, development of relevant facts will determine whether the unlawfulness of the traffic stop and subsequent searches should have been apparent to a reasonable law enforcement officer. Accordingly, Defendants' motion to dismiss based on qualified immunity is denied.

## V.     LEAVE TO AMEND

Plaintiff requests leave to amend his claims "in the event the Court finds that any one of these claims is not sufficiently plead." (Dkt. No. 13-2, at 20). Plaintiff's request for leave to

amend his claim for excessive force is granted. Any amendment to Plaintiff's claim for conspiracy to violate civil rights, however, would be futile because the claim would remain barred by the intracorporate conspiracy doctrine. *See Terry v. Inc. Vill. of Patchogue*, 826 F.3d 631, 633 (2d Cir. 2016) ("[L]eave to amend need not be granted when amendment would be futile."). Plaintiff's request for leave to amend his claim for conspiracy to violate civil rights is therefore denied.

## VI. CONCLUSION

For these reasons, it is

**ORDERED** that Plaintiff's claims against Defendants in their official capacities are **DISMISSED**; and it is further

**ORDERED** that Defendants' motion to dismiss (Dkt. 8-1) is **DENIED** as to Plaintiff's racial discrimination claim; and it is further

**ORDERED** that Defendants' motion to dismiss (Dkt. 8-1) is otherwise **GRANTED** in its entirety; and it is further

**ORDERED** that Plaintiff is granted leave to file an Amended Complaint as set forth above within **THIRTY DAYS** of the date of this Order; and it is further

**ORDERED** that in the event Plaintiff fails to file an Amended Complaint, the case will proceed only with respect to the claims in the Complaint that have not been dismissed, that is Plaintiff's First, Fifth and Ninth claims against the Defendants in their individual capacities.

**IT IS SO ORDERED.**

December 20, 2017
Syracuse, New York

*[signature]*
Brenda K. Sannes
U.S. District Judge

15